```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ANTOINETTE LEVITT                  : CIVIL ACTION
                                   :
           Plaintiff               :
                                   :
      vs.                          :
                                   : NO. 10-CV-6823
TECHNICAL EDUCATION SERVICES, INC. :
                                   :
           Defendant               :
```

**MEMORANDUM AND ORDER**

**JOYNER, C.J.**                                **August     7, 2012**

This employment discrimination/wage loss matter is now before the Court for adjudication of the parties' cross-motions for partial summary judgment as to Plaintiff's claims for unpaid overtime wages.  For the reasons which follow, the Defendant's motion shall be granted and Plaintiff's motion denied.

**Factual Background**

Plaintiff Antoinette Levitt was employed by Defendant, Technical Education Services, Inc. ("TES") from November 2008 until her termination in February 2010.[1]  This was the second employment relationship which Plaintiff had with AIM. Previously, she had served as the School Director from 2004-2007,

---

[1] More particularly, Plaintiff was employed at the Philadelphia campus of TES-owned Aviation Institute of Maintenance ("AIM"), a technical school with focus on educating and training its students to become aircraft mechanics and to perform aircraft maintenance and repair services.

and prior to that, was the school's owner until 1997.[2]  She was terminated from her School Directorship position in early May, 2007.  (N.T. Am. Compl., ¶s 10-12).

In August, 2008, Defendant offered Plaintiff a new position at the Philadelphia campus as the Northeast Director of Recruiting and Admissions.  Plaintiff accepted the offer and began work in early November, 2008.  (Def's Motion for Summary Judgment, Exhibit "D").  According to the offer letter, this would be a salaried position at the base rate of $52,000 annually with eligibility for a bonus of up to another $10,000 per year and Plaintiff's "major areas of responsibility would include recruiting of students, promotion of the school, interfacing with the aviation business community for appropriate joint projects and job placements, and related activities."  (Id.; Def's Motion for Summary Judgment, Exhibit "E").  Plaintiff held this position until early February 2010[3], when she was terminated for poor performance. (Pl's Am. Compl., ¶14; Def's Motion for Summary Judgment, Exhibit "I").

In addition to asserting a claim under the Age

---

[2] As reflected by Plaintiff's resume, she was a part-owner and Director of Operations of the school as it was then known by its former name - Quaker City Institute of Aviation, from 1990-1997.  (Defendant's Motion for Summary Judgment, Exhibit "B"; Pl's Dep., 8/26/11, p. 23, annexed to Defendant's Motion for Summary Judgment as Exhibit "A").

[3] According to Defendant's Answer to the Amended Complaint, Plaintiff began working for it as the Northeast Director of Recruiting and Admissions on November 3, 2008 and was terminated from this position on February 2, 2010. (Ans., ¶ 10).

Discrimination in Employment Act ("ADEA"), Plaintiff's Amended Complaint avers that, notwithstanding Plaintiff's supervisory job title, she "only performed the same basic functions as other recruiters who were paid overtime compensation." (Am. Compl., ¶s 21-22). As a consequence, Plaintiff seeks to recover unpaid overtime wages pursuant to the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et. seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §330.101, *et. seq.,* and Wage Payment and Collection Law, ("WPCL"), 43 P.S. §260.1, *et. seq.* Defendant rejoins that, as Plaintiff was an exempt employee within the meaning of the statutes, she has no entitlement to overtime compensation.

### **Standards Applicable to Summary Judgment Motions**

Under Fed. R. Civ. P. 56(a),

> A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

It should be noted that an issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. Bilibi v. Klein, No. 05-3496, 2007 U.S. App. LEXIS 20694 at *3, 249 Fed. Appx. 284, 286 (3d Cir. Aug. 29, 2007)(citing

Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)). See also, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986). If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden." Kaucher, supra, (quoting Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998)). In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. See, Conoshenti v. Public Service Electric & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004); Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). "The mere existence of some evidence in support of the non-movant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue." Renchenski v. Williams, 622 F.3d 315, 324 (3d Cir. 2010)(quoting Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009); Bruesewitz v. Wyeth, Inc., 561 F.3d 233, 253 (3d Cir. 2009).

### Discussion

     As noted above, *both* Plaintiff and Defendant here are moving for the entry of judgment in their favor as a matter of law on Plaintiff's claims for unpaid overtime compensation under the FLSA and the Pennsylvania MWA and WPCL. "Congress enacted the

FLSA in 1938 with the goal of "protecting all covered workers from substandard wages and oppressive working hours," and to that end, the FLSA "imposes minimum wage and maximum hours requirements on employers." Christopher v. Smithkline Beecham Corp., ___U.S.___, 132 S. Ct. 2156, 2161, 2162, 183 L. Ed.2d 153, 164, 165 (2012)(quoting Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 739, 101 S. Ct. 1437, 67 L. Ed.2d 641 (1981)). In this regard, the FLSA reads as follows in pertinent part:

> **§ 207. Maximum hours**
>
> **(a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions.**
>
>> (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
>>
>> ...

The Pennsylvania Minimum Wage Act is similar and it too, provides, in relevant part:

> Employees shall be paid for overtime not less than one and one-half times the employe's regular rate as prescribed in regulations promulgated by the secretary: Provided, That students employed in seasonal occupations as defined and delimited by regulations promulgated by the secretary may, by such regulations, be excluded from the overtime provisions of this act: And provided further, That the

>   secretary shall promulgate regulations with respect to
>   overtime subject to the limitations that no pay for overtime
>   in addition to the regular rate shall be required except for
>   hours in excess of forty hours in a workweek.

43 P.S. §333.104©.

> And, under Pennsylvania's Wage Payment and Collection Law,
>
>   Every employer shall pay all wages, other than fringe
>   benefits and wage supplements, due to his employes on
>   regular paydays designated in advance by the employer.
>   Overtime wages may be considered as wages earned and payable
>   in the next succeeding pay period. All wages, other than
>   fringe benefits and wage supplements, earned in any pay
>   period shall be due and payable within the number of days
>   after the expiration of said pay period as provided in a
>   written contract of employment or, if not so specified,
>   within the standard time lapse customary in the trade or
>   within 15 days from the end of such pay period. ...

43 P.S. §260.3(a).

The courts have held that these Pennsylvania state laws are to be interpreted in the same fashion as the FLSA inasmuch as the state and federal acts have "identity of purpose" and "the state statute substantially parallels the federal." Commonwealth v. Stuber, 822 A.2d 870, 873 (Pa. Cmwlth. 2003) (*aff'd per curiam*, 580 Pa. 66, 859 A.2d 1253 (2004)). See also, Baum v. Astra Zeneca, No. 09-2150, 372 Fed. Appx. 246, 248, n.4, 2010 U.S. App. LEXIS 6047 at *5, n.4 (3d Cir. Mar. 24, 2010)("Pennsylvania courts have looked to federal law regarding the Fair Labor Standards Act ("FLSA") for guidance in applying the PMWA."). Thus, "deference is properly given to the federal interpretation." Stuber, supra. *In accord*, Bayada Nurses, Inc.

v. Pennsylvania Department of Labor & Industry, 958 A.2d 1050, 1058 (Pa. Cmwlth. 2008) and Vanstory-Frazer v. CCHS Hospital Company, Civ. A. No. 08-3910, 2010 U.S. Dist. LEXIS 387 at *29-*30 (E.D. Pa. Jan. 4, 2010)("Although the criteria for these exemptions under the PMWA are not identical to FLSA's criteria, the court agrees that the tests are sufficiently similar that the court's analysis regarding the FLSA exemptions also applies to the PMWA exemptions."). For this reason, while our discussion herein shall primarily focus on the FLSA, it applies with equal force to the claims asserted under the Pennsylvania statutes.

Of course, "[e]xemptions from the FLSA are to be narrowly construed against the employer, and the employer has the burden of establishing an exemption." Pignataro v. Port Authority of New York and New Jersey, 593 F.3d 265, 268 (3d Cir. 2010)(citing Guthrie v. Lady Jane Collieries, Inc., 722 F.2d 1141, 1143 (3d Cir. 1983)). The question whether an employee is exempt is a mixed question of law and fact. Id. "Specifically, an employer seeking to apply an exemption to the FLSA must prove that the employee and/or employer comes 'plainly and unmistakably' within the exemption's terms." Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008), *cert. denied*, 129 S. Ct. 763, 172 L. Ed.2d 755 (2008)(quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S. Ct. 453, 4 L. Ed.2d 393 (1960)).

In this case, Defendant asserts that Ms. Levitt's position

7

was exempt from the overtime requirements of federal and state law and that, in particular, it "satisfied the administrative exemption and/or the outside sales exemptions" delineated under the FLSA and the PMWA.  (Sixth Affirmative Defense, Def's Ans. to Pl's Am. Compl., at p. 9).  On these points, the FLSA provides, in pertinent part:

> The provisions of sections 6 (except section 6(d) in the case of paragraph (1) of this subsection) and 7 [29 U.S.C. §§206, 207] shall not apply with respect to -
>
>> (1) any employee employed in a bona fide executive, administrative, or professional capacity (including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools), or in the position of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of the Administrative Procedure Act [5 U.S.C. §§551, *et. seq.*] except ... [that] an employee of a retail or service establishment shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity because of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive or administrative activities, if less than 40 per centum of his hours worked in the workweek are devoted to such activities; ...

29 U.S.C. §213(a)(1).

And the PMWA provides likewise:

> Employment in the following classifications shall be exempt from both the minimum wage and overtime provisions of this act:
>
>> ...
>>
>> (5) In a bona fide executive, administrative or professional capacity (including any employe employed in the capacity of academic administrative personnel or

>     teacher in elementary or secondary schools) or in the
>     capacity of outside salesman (as such terms are defined
>     and delimited from time to time by regulations of the
>     secretary, except that an employe of a retail or
>     service establishment shall not be excluded from the
>     definition of employe employed in a bona fide executive
>     or administrative capacity because of the number of
>     hours in his or her workweek which he or she devotes to
>     activities not directly or closely related to the
>     performance of executive administrative activities, if
>     less than forty percent of his or her hours worked in
>     the workweek are devoted to such activities);

43 P.S. §333.105(a)(5).

Pursuant to the federal regulation, 29 C.F.R. §541.200,

> (a) The term "employee employed in a bona fide
> administrative capacity" in section 13(a)(1) of the Act
> shall mean any employee:
>
>> (1) Compensated on a salary or fee basis at a rate of
>> not less than $ 455 per week (or $ 380 per week, if
>> employed in American Samoa by employers other than the
>> Federal Government), exclusive of board, lodging or
>> other facilities;
>>
>> (2) Whose primary duty is the performance of office or
>> non-manual work directly related to the management or
>> general business operations of the employer or the
>> employer's customers; and
>>
>> (3) Whose primary duty includes the exercise of
>> discretion and independent judgment with respect to
>> matters of significance.

The parameters of the "outside sales" exemption are, in turn, further defined at 29 C.F.R. §541.500:

> (a) The term "employee employed in the capacity of outside
> salesman" in section 13(a)(1) of the Act shall mean any
> employee:
>
> (1) Whose primary duty is:
>
>> (I) making sales within the meaning of section 3(k) of

9

>    the Act, or
>
>    (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
>
> (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.
>
> (b) The term "primary duty" is defined at §541.700.  In determining the primary duty of an outside sales employee, work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work.  Other work that furthers the employee's sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences.
>
> ©  The requirements of subpart G (salary requirements) of this part do not apply to the outside sales employees described in this section.

Again, the definitions of administrative employees and outside salesman are similar under Pennsylvania law:

> Employment in a bona fide administrative capacity means work by an individual:
>
>    (1) Whose primary duty consists of the performance of office or nonmanual work directly related to management policies or general operation of his employer or the customers of the employer.
>
>    (2) Who customarily and regularly exercises discretion and independent judgment.
>
>    (3) Who regularly and directly assists an employer or an employee employed in a bona fide executive or administrative capacity, who performs under only general supervision work along specialized or technical lines requiring special training, experience or knowledge, or who executes under only general supervision special assignments and tasks.

> (4) Who does not devote more than 20% of time worked in a workweek, or, in the case of an employee of a retail or service establishment, who does not devote more than 40% of time worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (1) - (3).
>
> (5) Who is paid for his services a salary of not less than $155 per week, exclusive of board, lodging, or other facilities, provided that an employee who is compensated on a salary or fee basis at a rate of not less than $250 per week, exclusive of board, lodging or other facilities and whose primary duty consists of the performance of work described in paragraph (1), which includes work requiring the exercise of discretion and independent judgment, shall be deemed to meet all of the requirements of this section.

34 Pa. Code §231.83.

> Outside salesman means an employee who is employed for the purpose of and who is customarily and regularly engaged more than 80% of work time away from the employer's place or places of business in the following manner:
>
>> (1) Making sales, including any sale, exchange, contract to sell, consignment for sale, or other disposition or selling, and delivering articles or goods.
>>
>> (2) Obtaining orders or contracts for the use of facilities for which a consideration will be paid by the client or customer.  In addition, the employee may not spend more than 20% of the hours worked in any week in work of a nature not directly related to and in conjunction with the making of sales; provided however, that work performed incidental and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections shall not be regarded as nonexempt work.

34 Pa. Code §231.85.

Thus, to be categorized as an administrative employee for purposes of determining entitlement to overtime wages, the work of the employee must satisfy the criteria set forth in 29 C.F.R.

§541.200 and 34 Pa. Code §231.83. That is, the employee must be compensated on a salary basis, the employee's primary duties[4] must qualify as "administrative," and the employee must exercise independent judgment and discretion[5] in the performance of those duties. O'Bryant v. City of Reading, No. 05-4259, 197 Fed. Appx. 134, 136, 2006 U.S. App. LEXIS 18360, *5-*6 (3d Cir. July 20, 2006). An outside salesman "is any employee whose primary duty is making any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition," or "obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer" and

---

[4] "The term 'primary duty' means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider ... include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. §541.700(a).

[5] Among the factors to be considered in determining "whether an employee exercises discretion and independent judgment with respect to matters of significance" are: "whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances." 29 C.F.R. §541.202(b).

"who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." Christopher, 132 S. Ct. at 2162, 183 L. Ed.2d at 165 (quoting, *inter alia*, 29 U.S.C. §203(k), 29 C.F.R. §541.500(a)(1), (2)).

In this case, the record evidence demonstrates that Plaintiff was paid $52,000 annually plus a bonus in an amount up to $10,000 for her work as the Regional Director of Recruiting and Admissions. (Pl's Dep., 8/26/11, 26-27, 30, 32). (Def's Motion for Partial Summary Judgment, Exhibit "D"). This position was a new one, created by the owner of TES and AIM, Gerald Yagan. (Pl's Motion for Partial Summary Judgment, Exhibit "I," 9-12). Plaintiff received a written job description which provided, in relevant part, that she was to be supervised directly by the Corporate Director of Admissions and that she would be responsible for, *inter alia*, mapping out her territory and determining the "lead potential of all high schools and outside recruiting opportunities within a 100-mile radius of AIM Philadelphia Campus," attending "college days and nights, high school events and special programs and related career fairs, and other relevant outside recruiting event opportunities," creating "professional presentations for promotional opportunities," visiting "high school teachers, guidance departments, occupational specialists and other key individuals at the high

13

schools to encourage public relations and facilitate student recruitment," working "all self generated leads to conclusion, through the complete lead cycle from Lead to Start including, taking inbound calls and making outgoing calls, scheduling appointments, interviewing students, receiving applications and doing the necessary follow-up to insure that enrolled students complete the financial aid process and then attend orientation and start school as scheduled," and reporting "all sales and lead generation activity daily to the Corporate Director of Admissions..."  (Def's Motion for Partial Summary Judgment, Exhibit "E").

Both Plaintiff and her supervisor, Lorraine Schreiber, testified that Plaintiff herself determined what high schools to target for recruitment, what counselors or other school authorities to speak and develop relationships with, when to visit school and/or students, when to meet with prospective students, and what type of presentations to make and when.  (Pl's Dep., 8/26/11, 42-47).  Plaintiff also developed all of her own recruiting materials and presentations and determined how much time to spend with each prospect.  (Pl's Dep., 8/26/11, 46-49; Dep. of Rita Beattes, annexed to Plaintiff's Motion as Exhibit "F," 41-42).  In short, Plaintiff set her own schedule and independently determined where she would be going, who she would be seeing and how she would be spending her time on any given

work day.  (Pl's Dep., 8/26/11, 55-57, 59-60; Dep. of Lorraine Schreiber, annexed to Pl's Motion for Partial Summary Judgment, Exhibit "H," 23-24).  Plaintiff also was not required to check in with her supervisor on a daily basis.  (Pl's Dep., 8/26/11, 59).

    Additionally, Plaintiff acknowledged that the position was a salaried position and that it was classified as exempt.  (Pl's Dep., 8/26/11, 23-24, 91-93, 110-113).  She received her salary in equal installments throughout the course of the year, regardless of the number of hours worked.  (Pl's Dep., 8/26/11, 26-27, 61).  While Plaintiff did perform some of the same duties as did the admissions representatives, such as answering the telephones when the receptionist was unavailable, meeting with walk-ins, giving school tours, talking on the phone with prospective students, and looking for recruitment material, the admissions representatives were paid significantly less – approximately $29,500 annually and were specifically told that they were not to work in excess of 40 hours per week.  (Pl's Dep., 83-86; Dep. Of Kristine White, a copy of which is annexed as Exhibit "D" to Plaintiff's Motion for Partial Summary Judgment, at pp. 23-24, 28-30).

    Further, unlike Plaintiff, the admissions representatives were not responsible for going out and getting their own leads, relying instead on the leads generated by Plaintiff and/or received from the receptionist; nor did admissions

representatives have to create any of their own promotional materials, slide shows or video presentations. (Pl's Dep., 75-76; White Dep., 25-30).

Moreover, Plaintiff was outside of the regular Philadelphia campus organizational structure. She did not report through the campus hierarchy to Director of Admissions Woodrow Day or to the Campus Executive Director, Kyle Berry. (Dep. Of Woodrow Day, annexed as Exhibit "G" to Plaintiff's Motion for Partial Summary Judgment, pp. 7, 9-13; Dep. Of Kyle Berry, attached to Plaintiff's Motion for Partial Summary Judgment as Exhibit "K," pp. 6-7, 12-14; Beattes Dep., 39-40). Rather, Plaintiff reported directly to Lorraine Schreiber, the Corporate Director of Admissions, who was in the corporate offices in Virginia Beach, Virginia. (Schreiber Dep., 9-11; Pl's Dep., 8/26/11, 48-49, 72-73; White Dep., 32-33; Day Dep., 10-11).

This evidence is, we find, more than sufficient to conclusively establish that the plaintiff was a salaried employee whose primary duty consisted of the performance of non-manual, office work directly related to the general business operations of the school by whom she was employed (*i.e.* securing students for the school) and that she had a vast amount of discretion and independent judgment in determining how to best recruit students *i.e.,* how to perform her job. We therefore conclude that Plaintiff was employed in a salaried, bona fide administrative

capacity and that she was therefore exempted from the overtime requirements of both the FLSA and PMWA.

Finally, although the record reflects that Plaintiff was routinely out of the office for job and/or career fairs, meetings with students, school counselors, etc., there is insufficient evidence of the amount and/or percentage of time which Plaintiff spent out of the office in relation to the amount/percentage of time which she spent working in the office. (White Dep., 60; Beattes Dep., 45-46; Day Dep., 40; Schreiber Dep., 21-22). Notwithstanding that the regulations recognize that "[p]romotional work that is actually performed incidental to and in conjunction with an employee's own outside sales or solicitations is exempt work,"[6] we cannot discern from the existing record how much time Plaintiff spent on this type of work. Accordingly, we find that Defendant has failed to meet its burden of proving its entitlement to summary judgment on the basis that this Plaintiff falls within the outside sales exemption. However, inasmuch as we find that Plaintiff falls within the administrative exemption, we grant summary judgment to Defendant on Plaintiff's claims for overtime wages under the federal and state acts and deny Plaintiff's motion for the same reason.

An order follows.

---

[6] 29 C.F.R. §541.503(a).